The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on March 24, 2021, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: March 24, 2021



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOHN W. STRUHAR, SR., | ) | Case No. 20-11957 |
|     Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |
| PEARL OF THE ORIENT III, INC., | ) | |
|     Plaintiff. | ) | Adversary Proceeding |
| | ) | No. 20-1072 |
| v. | ) | |
| | ) | |
| JOHN W. STRUHAR, SR., | ) | |
|     Defendant. | ) | |

MEMORANDUM OF OPINION[1]

This case is currently before the Court on the motion for summary judgment of the debtor-defendant, John W. Struhar, Sr. ("the debtor"). The debtor contends that he is entitled to summary judgment in this nondischargeability action by Pearl

---

[1] This Opinion is not intended for official publication.

of the Orient III, Inc. ("Pearl") under both 11 U.S.C. § 523(a)(4) (Count I) and § 523(a)(2)(A) (Count II) because the debt owed to Pearl was incurred by Bottomline Auctions Inc. ("Bottomline"), a corporation that was wholly owned by the debtor. The debtor argues that because Pearl has not shown that the debtor was the alter ego of Bottomline, the debtor should not be personally liable for the debt of the separate corporate entity. For the reasons that follow, the debtor's motion for summary judgment is granted with respect to § 523(a)(4) (Count I) and denied with respect to § 523(a)(2)(A) (Count II).

JURISDICTION

This Court has jurisdiction over this action. Determinations of dischargeability under 11 U.S.C. § 523 are core proceedings under 28 U.S.C. § 157(b)(2)(I) and Local General Order No. 2012-7, entered by the United States District Court for the Northern District of Ohio.

BACKGROUND

Unless otherwise indicated, the facts described below are not in dispute. The debtor was the sole equity owner of Bottomline, which operated as an auction mediation company from 2009 until January 2020 (Docket No. 9). An auction mediation company is "a company that provides a forum through the internet for a person to sell the person's real or personal property via the submission of silent

2

bids using a computer or other electronic device." Ohio Rev. Code Ann. § 4707.01(G). Pearl and Bottomline entered an agreement for Bottomline to conduct an online auction of certain restaurant equipment after Pearl's restaurant closed on August 31, 2019 (Docket No. 1). The parties entered into a written agreement on August 22, 2019, under which the debtor would receive a 25 percent commission from the sale (Docket No. 24).

According to Pearl, the restaurant equipment at issue was sold via online auction on September 8, 2019, and "a majority of the equipment was sold reputedly for $8,307.68 by the [debtor]" (Docket No. 1). Pearl claims that, despite repeated demands, the debtor has refused to give Pearl information regarding many details of the sale, including "an accounting of which items were sold, what sale price was paid for each item sold by the purchasers, which items were sold but not picked up by the purchasers, a list of purchasers who received refunds received refunds for items not picked up, which items were not present, and explanation of the commissions received by [the debtor] and credit card processing fees charged to Plaintiff" (*Id.*). According to Pearl, a check for $5,014.80 was sent by the debtor on October 9, 2019, which Pearl tried to deposit on December 4, 2019, but the check did not go through and Pearl was charged a $15.00 return charge (*Id.*; Docket No. 36, paragraph 7).

3

On April 13, 2020, the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code (Case No. 20-11957, Docket No. 1). On Schedule E, the debtor listed an unsecured debt held by Pearl in the amount of $5,013.00. The debtor listed the debt as a nonpriority unsecured claim "business charge-off." The debtor checked the box to indicate that the claim was disputed. On the Statement of Financial Affairs, the debtor indicated that the debt was the subject of a pending case in the Cuyahoga County Court of Common Pleas (Case No. CV-20-928505), which is currently stayed due to the debtor's bankruptcy case. On July 17, 2020, Pearl filed this adversary proceeding claiming that the debt incurred by failing to remit the auction proceeds to Pearl should be nondischargeable under 11 U.S.C. § 523(a)(2)(A) and/or § 523(a)(4).

On January 21, 2021, the debtor filed a motion for summary judgment (Docket No. 24). In the motion, the debtor argues that the debt owed to Pearl was incurred by Bottomline and any allegedly wrongful actions were by Bottomline, not by the debtor personally. The debtor argues that there is no evidence and no allegations that the debtor should be held personally liable for the debts of Bottomline, a separate corporate entity.

On February 19, 2021, Pearl filed a response to the debtor's motion for summary judgment (Docket No. 31). In its response, Pearl claims that the debtor

4

"breached his promise to personally pay Pearl [] the proceeds he received from selling the property belonging to [Pearl]." Pearl argues that "[t]here is a material issue before this court whether [the debtor], individually created a fiduciary relationship with [Pearl] promising to take actions to pay Pearl [] monies received during auction."

On March 4, 2021, the debtor filed a reply to Pearl's response (Docket No. 33). In his reply, the debtor again argues that he cannot be held personally responsible for business debts incurred by Bottomline.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 was amended in 2010; however, "[t]he commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary-judgment standard." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*,

5

671 F.3d 564, 569 (6th Cir. 2012) (citation omitted). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id.* at 570.

DISCUSSION

In his motion for summary judgment, rather than focusing on his own potential liability, the debtor's main argument is that no evidence has been presented to make the debtor liable for the debt of Bottomline under a theory of alter ego or piercing the corporate veil. However, if the debtor himself is the one who committed the misrepresentation or fraudulent scheme, the debtor is the one who is personally liable for his own tort, rather than being liable through a separate company under a theory of alter ego or piercing the corporate veil. Simply because someone is an agent of a separate corporate entity, that does not mean that if the agent commits a tort or other wrong the agent cannot be sued in the agent's personal capacity:

> Ohio law provides that a corporate officer can be held personally liable for a tort committed while acting within the scope of his employment. . . . "Agents, like other persons, are bound to exercise ordinary care in the performance of their duties. If an agent fails to exercise care, and negligently or intentionally causes injury to another, the fact of agency will not relieve him of liability, and this is so even though the principal may be liable also. This general principle is applicable to corporate officers and agents. So, if a corporate officer commits a tort while in the performance of his duties, not only the corporation but the officer also will be liable for the wrongful acts."

6

*Atram v. Star Tool & Die Corp.*, 64 Ohio App. 3d 388, 393, 581 N.E.2d 1110, 1113 (1989) (quoting 12 Ohio Jurisprudence 3d (1979) 127-128, Business Relationships, § 346); *see also Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 847 (6th Cir. 1999) ("In Ohio both a corporation and an officer are liable for wrongful acts committed by an officer in performance of his corporate duties."). In short, no evidence of alter ego or veil piercing is needed if the debtor is personally liable to Pearl under some other state law claim, such as common-law fraud or a personal guarantee.

Absent a stipulation as to the debtor's liability on an underlying state law claim and the amount of such claim, Pearl will need to establish the elements of such a claim, in addition to the elements for the nondischargeability of such claim under 11 U.S.C. § 523(a)(4) or (a)(2)(A). For purposes of the debtor's motion for summary judgment, the evidence when construed in a light most favorable to Pearl supports a claim that the debtor signed a check in the amount of $5,014.80 and delivered it to Pearl knowing that there were insufficient funds in the account.

DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

Section 523 of the Bankruptcy Code provides, in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual from any debt—
>
> . . . .

7

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . .

The Sixth Circuit has defined defalcation to encompass "not only embezzlement and misappropriation by a fiduciary, but also the failure to properly account for such funds." *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (citations omitted).

> A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: (1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss.

*Id.* (citations omitted). "Fiduciary capacity," as applied in the defalcation provision of § 523, is construed more narrowly than the term is used in other contexts. The defalcation provision applies only to express or technical trusts, and "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. . . . Accordingly, the defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 639-40 (citations omitted).

In addition, the Supreme Court recently addressed the state of mind requirement for defalcation under § 523(a)(4) of the Bankruptcy Code in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013). In *Bullock*, the Supreme Court held that defalcation under § 523(a)(4) "includes a culpable state of mind

8

requirement akin to that which accompanies application of the other terms in the same statutory phrase . . . one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 569 U.S. at 269.

Embezzlement is defined as the "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Bucci*, 493 F.3d at 644 (quoting *Brady*, 101 F.3d at 1173).

The degree of fraud required for embezzlement is fraud in fact involving moral turpitude or intentional wrongdoing, for the purpose of permanently depriving another of his property. *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007). Since a debtor is unlikely to admit to acting with bad motives, fraudulent intent may be shown through circumstantial evidence. *Id.* at 116. The court may be aided in its subjective analysis by the presence of traditional indicia of fraud—"e.g., suspicious timing of events, insolvency, transfers to family members or other insiders." *Automated Handling v.*

9

*Knapik (In re Knapik)*, 322 B.R. 311, 316 (Bankr. N.D. Ohio 2004). The court should review the circumstances surrounding the case and determine "whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 282 (6th Cir. 1998). For embezzlement, a creditor may establish circumstances indicating a debtor's fraudulent intent, even if the debtor did not make a misrepresentation or misleading omission on which the creditor relied. *Fox*, 370 B.R. at 116. As a result, the creditors do not need to demonstrate justifiable reliance to prove "fraud in fact" under § 523(a)(4).

For purposes of § 523(a)(4), larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 n.3 (Bankr. N.D. Ohio 2003). The original taking of the property must have been unlawful. *See Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke)*, 212 B.R. 375, 381 (Bankr. D. Kan. 1997).

In Count I of the complaint, Pearl alleges that the debt is nondischargeable under § 523(a)(4). Although under § 523(a)(4) a debt is nondischargeable for embezzlement, larceny, or defalcation, Pearl's complaint only alleges defalcation.

10

Because the complaint does not allege that the debt is nondischargeable for embezzlement or larceny, the Court will not address those issues.

In its response to the motion for summary judgment, Pearl acknowledges that "an express or technical trust is necessary to trigger the defalcation provision of Section 523(a)(4)" (Docket No. 31, pg. 3). However, Pearl does not make any allegations that an express or technical trust was created. Pearl claims that the debtor created a fiduciary relationship with Pearl when he "promised to act for the benefit of Pearl [] and guaranteed to pay Pearl [] proceeds from the auction sale [the debtor] knowingly took as "salary" from his wholly owned company, [Bottomline]" (*Id.* at pg. 4). However, an exception to discharge under § 523(a)(4) for defalcation "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. . . . [T]he defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Bucci*, 493 F.3d at 639-40. Nothing in the complaint, response to motion for summary judgment, or in any of the relevant affidavits or documents alleges the elements of an express or technical trust with respect to the debtor. There is no genuine issue of material fact as to whether an express or technical trust was created between the debtor

11

personally and Pearl, and therefore the debtor's motion for summary judgment as to § 523(a)(4) is granted.

Whether the elements of an express or technical trust are alleged as to Bottomline is irrelevant; Bottomline is not a party to this action. Moreover, even if Pearl had entered into the same arrangement personally with the debtor directly, such an arrangement would not meet the technical trust requirements for defalcation under § 523(a)(4). *See*, *e.g.*, *Aamodt v. Narcisi (In re Narcisi)*, 539 B.R. 385, 392 (Bankr. M.D. Fla. 2015) ("Bankruptcy courts have consistently held that an individual who serves as an auctioneer or consignee under a private contract does not act in a fiduciary capacity.") *aff'd,* 559 B.R. 233 (M.D. Fla. 2016), *aff'd,* 691 F. App'x 606 (11th Cir. 2017); *Freer v. Beetler (In re Beetler)*, 368 B.R. 720, 726 (Bankr. C.D. Ill. 2007) (no fiduciary relationship created under § 523(a)(4) from consignment sale of tractor); *Poe v. Marshall (In re Marshall)*, 24 B.R. 105, 107 (Bankr. W.D. Mo. 1982) ("[T]he relationship of auctioneer-seller contained none of the attributes of an express or technical trust. There was no fiduciary relationship between plaintiff and defendant when the property was sold.").

In this case, there is nothing in the one page "Auction Consignment Agreement" that created a technical trust meeting the requirements of § 523(a)(4).

*See Narcisi*, 691 F. App'x at 611 ("[A] consignment agreement creating an agency relationship does not, by itself, establish a fiduciary relationship for purposes of § 523(a)(4).") (citing *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005)). Nor is there anything under Ohio statutory provisions for auctioneers that creates a technical trust for auction mediation companies such as Bottomline. Rather, Chapter 4707 of the Ohio Revised Code generally exempts "auction mediation companies" from the licensing and other regulatory requirements contained in that chapter. Ohio Rev. Code Ann. § 4707.02.

## DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

Section 523 provides in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
> . . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

To except a debt from discharge for false representation under § 523(a)(2)(A), a creditor must prove: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross

13

recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *Rembert*, 141 F.3d at 280-81. The creditor must demonstrate justifiable reliance under this section and need not pass the higher standard of reasonable reliance. *Field v. Mans*, 516 U.S. 59, 74-75 (1995).

A debt may also be excepted for discharge under § 523(a)(2)(A) for "actual fraud." In *Husky Intern. Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1590 (2016), the Supreme Court held that the term "actual fraud" in § 523(a)(2)(A) includes fraudulent schemes even when those schemes do not involve a false representation, such as a fraudulent conveyance of property made to evade payment to creditors. For example, if the debtor's use of Bottomline were all part of an elaborate fraud to sell the equipment of entities such as Pearl with no intention of turning over the proceeds, that would establish nondischargeability for "actual fraud" under § 523(a)(2)(A).

Section 523(a)(2)(A) expressly excludes all statements respecting a debtor's financial condition, whether written or oral, as a basis for nondischargeability. *Prim Capital Corp. v. May (In re May)*, 368 B.R. 85, 2007 WL 2052185, at *5 (B.A.P. 6th Cir. 2007). Instead, statements respecting a debtor's financial condition fall under § 523(a)(2)(B). A debt based upon an oral misrepresentation

14

of financial condition is not actionable and will be dischargeable. *Id*. The United States Supreme Court has recently held that the term "statement . . . respecting the debtor's . . . financial condition" should be interpreted very broadly, encompassing even a statement about a single asset. *Archer, Lamar & Cofrin v. Appling*, 138 S.Ct. 1752, 1764 (2018). Justice Sotomayor explained that creditors still benefit from the protection of § 523(a)(2)(B) so long as they insist that the representations respecting the debtor's financial condition on which they rely in extending money, property, services, or credit are made in writing. *Id*. Doing so will likely redound to their benefit, as such writings can foster accuracy at the outset of a transaction, reduce the incidence of fraud, and facilitate the more predictable, fair, and efficient resolution of any subsequent dispute. *Id*.

In Count II of the complaint, Pearl alleges that the debt is nondischargeable under § 523(a)(2)(A). To make a determination of nondischargeability for false representation under § 523(a)(2)(A), Pearl must first show that the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth. *Rembert*, 141 F.3d at 280-81. According to Pearl's filings, the debtor provided Pearl with a check in the amount of $5,014.18 for the auction proceeds, which Pearl attempted to deposit in its bank account, but the check was rejected (Docket Nos. 1, 31, & 36). According to the

15

debtor's motion for summary judgment, by the time the payment to Pearl was due, "Bottomline had experienced a significant decline in business and the company had insufficient funds to pay its debt to [Pearl]" (Docket No. 24, pgs. 2-3). Therefore, the debtor may have sent the check to Pearl knowing that there were insufficient funds and that the check would be rejected. Viewing the evidence in the light most favorable to Pearl, a genuine issue of material fact exists as to whether the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth.

Second, Pearl must show that the debtor intended to deceive Pearl. If the debtor signed the check and sent it to Pearl knowing that there were not sufficient funds available and that the check would not go through, that could show the debtor's intent to deceive Pearl. Viewing the evidence in the light most favorable to Pearl, a genuine issue of material fact exists as to whether the debtor intended to deceive Pearl.

Third, Pearl must show that it justifiably relied on the debtor's false representation. By attempting to deposit the check in its bank account, Pearl apparently relied on the check sent by the debtor to cover the funds due under the auction agreement. Therefore, viewing the evidence in the light most favorable to

Pearl, a genuine issue of material fact exists as to whether Pearl justifiably relied on the debtor's false representation.

Finally, Pearl must show that its reliance on the debtor's false representation was the proximate cause of Pearl's loss. As discussed above, Pearl's attempt to deposit the check sent by the debtor can demonstrate reliance. However, according to Pearl, the check did not go through and Pearl never received the funds. Additionally, according to Pearl, the rejection of the check sent by the debtor caused Pearl's bank to charge Pearl a $15.00 return charge. Therefore, viewing the evidence in the light most favorable to Pearl, a genuine issue of material fact exists as to whether Pearl's reliance on the debtor's false representation was the proximate cause of Pearl's loss. Accordingly, the debtor's motion for summary judgment as to Count II of the complaint is denied.

CONCLUSION

For the reasons stated above, the debtor's motion for summary judgment is granted as to Count I of the complaint and denied as to Count II of the complaint. Count II will be the subject of a trial on April 21, 2021, and all trial-related deadlines remain in effect.

IT IS SO ORDERED.

17